IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:16-CV-52-D

DIANE L. HASSELL, )
        Plaintiff, )
v. ) **MEMORANDUM &**
) **RECOMMENDATION**
NANCY A. BERRYHILL,[1] )
Acting Commissioner of Social )
Security, )
)
        Defendant. )

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Diane L. Hassell ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE #19] be granted, Defendant's Motion for Judgment on the Pleadings [DE #21] be denied, and the matter remanded to the Commissioner for further proceedings.

---

[1] Plaintiff's complaint names Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security as a defendant to this action. Nancy A. Berryhill is now the Acting Commissioner of Social Security and therefore is substituted as a defendant to this action. *See* Fed. R. Civ. P. 25(d).

## STATEMENT OF THE CASE

Plaintiff protectively applied for DIB and SSI on January 31, 2012, with an alleged onset date of August 21, 2011. (R. 30, 75, 85.) These applications were denied initially and upon reconsideration and a request for hearing was filed. (R. 30, 95–98, 144.) A hearing was held on June 12, 2014, before Administrative Law Judge ("ALJ") Lisa R. Hall, who issued an unfavorable ruling on October 23, 2014. (R. 30, 39.) The Appeals Council denied Plaintiff's request for review on May 19, 2016. (R. 1.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility

determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since August 21, 2011, the alleged onset date. (R. 32.) Next, the ALJ determined Plaintiff had the following severe impairments: "fibromyalgia; degenerative disc disease; and carpal tunnel syndrome." (R. 33.) The ALJ found neither Plaintiff's depression nor her anxiety to be a severe impairment. (R. 35.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 35.) The ALJ considered Listings 1.04 and 1.08. (*Id.*)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with manipulative and environmental restrictions. [Plaintiff] can lift and carry and push/pull 10 pounds occasionally. She can sit for about six hours in an eight-hour workday. She can stand and walk for about two hours total in an eight-hour workday. She can use her hands frequently but not constantly for fingering and handling. She should avoid concentrated exposure to noise. She can work in a moderately noisy environment.

(R. 35.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms "not entirely credible." (R. 37.) At step four, the ALJ concluded Plaintiff was able to perform past relevant work as an administrative

assistant. (R. 38.) The ALJ did not proceed to step five because she found that Plaintiff could perform past relevant work.

IV. **Plaintiff's Arguments**

Plaintiff makes six arguments on review. She alleges that the ALJ erred by

(1) failing to find depression, anxiety, irritable bowel syndrome, and diverticulitis as severe impairments;

(2) assessing an RFC at the exertional level of sedentary with specific modifications;

(3) not assigning appropriate weight to the opinions of Plaintiff's treating physician, Dr. Theodore Nicholas;

(4) finding Plaintiff to be less than entirely credible regarding the severity of her symptoms;

(5) posing hypotheticals to the VE based on a flawed RFC; and

(6) concluding that Plaintiff was not under a continuous disability as defined in the Social Security Act.

(Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #20] at 23–31.) Arguments (2), (3), and (5) depend on the same issue—whether the ALJ appropriately weighed the treating physician's opinions when assessing Plaintiff's RFC. As discussed below, Plaintiff's arguments regarding her RFC and credibility have merit; therefore, the undersigned recommends remand to the Commissioner. Plaintiff's remaining arguments are meritless.[2]

---

[2] Argument (6) is summarily asserted and its distinction from the general and conclusory point that the Commissioner made the wrong decision is not discernible. It may be that Plaintiff is asserting that, similar to the point addressed in *Radford v. Colvin*, 734 F.3d 288, 292–94 (4th Cir. 2013), her disabling symptoms need not be present simultaneously or constantly to be disabled under the Social Security Act.

5

A. Depression and Anxiety as Severe Impairments

Plaintiff contends that the ALJ erred by determining that she is not severely impaired by depression, anxiety, irritable bowel syndrome, or diverticulitis. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 23–24.)

A "severe" impairment within the meaning of the regulations is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."[3] 20 C.F.R. §§ 404.1520(c), 416.920(c). Conversely, an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." SSR 85–28, 1985 WL 56856, at *3 (Jan. 1, 1985); *see also Evans v. Heckler,* 734 F.2d 1012, 1014 (4th Cir. 1984). The claimant has the burden of demonstrating the severity of her impairments. *Pass*, 65 F.3d at 1203.

At step two of the sequential evaluation process, the ALJ must determine whether a claimant's impairment(s), individually or in combination, are "severe." 20 C.F.R. §§ 404.1523, 416.923. So long as a claimant has any severe impairment or

---

Due to the lack of development of this argument by Plaintiff's counsel and the existence of other meritorious arguments, the undersigned does not further address this argument.

[3] Basic work activities are defined as the "abilities and aptitudes necessary to do most jobs." *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986) (citing 20 C.F.R. § 416.921(b)). For example, work activities might include walking, standing, sitting, lifting, pushing, pulling, and reaching; the capacity to see, hear and speak; and understanding, carrying out, and remembering simple instructions. *Id.* The definition of "basic work activities" for DIB and SSI claims now appears at 20 C.F.R. §§ 404.1522(b), 416.922(b).

combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process. *Id.; see also* SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining that the existence of one or more severe impairments requires the ALJ to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

Courts have found that an ALJ's failure to find a particular impairment severe at step two does not constitute reversible error where the ALJ determines that a claimant has other severe impairments and proceeds to evaluate all the impairments at the succeeding steps in the evaluation. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (agreeing with various circuit and district courts that "it is not reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation *provided the ALJ considers that impairment in subsequent steps*" (emphasis added)) (citing, *inter alia*, *Hill v. Astrue,* 289 F. App'x 289, 292 (10th Cir. 2008), and *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

Here, the ALJ found that Plaintiff suffered from multiple severe impairments at step two and proceeded to step three. The ALJ explicitly considered depression and anxiety but explained that she was rejecting these as severe impairments because Plaintiff's mental status findings in the medical evidence "have always been normal"; Plaintiff "has not been referred for treatment by a mental health care professional or [been] prescribed psychiatric medication"; and Plaintiff has never been diagnosed

7

with any mental illness. (R. 34–35.) Review of the record confirms that substantial evidence supports these statements. Moreover, the ALJ's reasoning as to these alleged impairments is well explained and consistent.

As to Plaintiff's diverticulitis and irritable bowel syndrome, the ALJ noted the potential impairing effects of these conditions when assessing Plaintiff's RFC. (R. 36.) Furthermore, as the Commissioner correctly notes, there is little evidence in the record to support a finding that these are severe impairments (Def.'s Mem. Supp. Mot. J. Pldgs [DE #22] at 17–18); this dearth of evidence provides ample support for the ALJ's finding that neither diverticulitis nor irritable bowel syndrome severely impairs Plaintiff as defined by the regulations. Thus, Plaintiff's assignment of error regarding the ALJ's failure to identify additional severe impairments should be overruled.

B.   Credibility[4]

Plaintiff contends that the ALJ incorrectly found her testimony regarding the severity of her symptom-related work limitations "not entirely credible" when assessing her RFC. (Pl.'s Mem Supp. Mot. J. Pldgs. at 28.) The ALJ's analysis of Plaintiff's credibility is logical, but it fails to identify portions of the record to justify

---

[4] As noted by the Commissioner (Def.'s Mem. Supp. Mot. J. Pldgs. at 20 n.5), the Social Security Administration no longer uses the term "credibility" to describe evaluation of a claimant's subjective statements regarding her symptoms. *See* SSR 16–3p, 81 Fed. Reg. 14,166 (Mar. 16, 2016), 81 Fed. Reg. 15,776 (Mar. 24, 2016) (clarifying effective date of original), 2016 WL 1119029 (Mar. 16, 2016), *superseding* SSR 96–7p, 1996 WL 374186 (July 2, 1996). For the reasons explained by the Commissioner, the undersigned uses the term "credibility" here.

8

its premises. (R. 37.) Upon review, several of the ALJ's factual statements that form the premises of her argument are contradicted by the record. The undersigned cannot determine whether substantial evidence supports the ALJ's credibility finding because these contradictions are left unexplained. Remand is, therefore, required.

The regulations require "an ALJ [to] follow[] a two-step analysis when considering a claimant's subjective statements about impairments and symptoms." *Lewis v. Berryhill*, 858 F.3d 858, 865–66 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c)). As explained by the Fourth Circuit:

> First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. The second determination requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Id.* at 866 (citations omitted); *see also* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). An ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

Here, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 37.) Therefore, the credibility analysis depends entirely on the ALJ's evaluation of Plaintiff's alleged symptom-related limitations. The ALJ explained her conclusion that Plaintiff's testimony was less than entirely credible as follows:

> [Plaintiff] has consistently reported having neck, back and shoulder pain as well as fatigue. However, the medical records do not show consistent treatment with providers. She has had lots of different providers. She has not always followed the treatment recommendations. [Plaintiff] found that most of the pain medications and fibromyalgia medications had negative side-effects, which outweighed their benefits. She is being seen by a pain management specialist. She has not worked with a rheumatologist. The claimant owned her own gas station convenience store. It closed due to the economy, not due to her impairments. Objective tests show relatively mild findings. Most of the physical examinations showed normal neurological findings. She had good function, a normal range of motion, and a normal gait. An EMG suggests carpal tunnel syndrome but there are few findings on physical examination with regard to this condition. Surgery has not been recommended and she has not been treated with splinting. These factors, when considered together, indicate that the claimant's allegations of function limitations are not fully credible.

(R. 37.) This analysis, on its face, makes sense. The factors identified by the ALJ—which operate as premises in her argument—could justify the conclusion that Plaintiff's reported functional limitations are not what Plaintiff reports. The record, however, stands in unexplained contrast to several of these statements.

First, the ALJ cites no evidence to support the statement that Plaintiff has had inconsistent treatment with providers.[5] Review of the record tends to show exactly the opposite: Plaintiff consistently sought treatment from primary care physicians, who then referred Plaintiff to other physicians for second opinions or to specialists. For instance, in October 2011, Hatteras Island Family Medicine (Dr. Al Hodges and Family Nurse Practitioner Alexis Hodges) noted that they recommended Plaintiff

---

[5] The ALJ summarizes the evidence in the record. (R. 33–34, 36–37.) But mere summary cannot suffice for "build[ing] an accurate and logical bridge from the evidence to [the ALJ's] conclusion[s]." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

follow up with "Healtheast" or a neurosurgeon in Greenville, North Carolina, regarding fibromyalgia, vertebral problems, and neck pain. (R. 329.) A few months later, Dr. Hodges noted that he advised Plaintiff that his practice did not do pain management. (R. 395.)

The record appears to show that Plaintiff heeded all of these suggestions: She began seeing Dr. Jamie Fountain of Healtheast (now Vidant Family Medicine Avon), who in turn referred her to (i) a neurosurgery practice in Greenville, ECU Physicians (Dr. Keith Tucci and Physician's Assistant Connie Cerne) (R. 372–73); and (ii) Dr. Kimberly Cerveny of Tarheel Internal Medicine for a second opinion (R. 377–79). Plaintiff undeniably followed up on the pain management "recommendation" because she saw Dr. Theodore Nicholas of Atlantic Pain Management twelve times from October 2012 through November 2014. (R. 406–13, 577–615, 663–676). Moreover, during the time period Drs. Hodges, Fountain, and Nicholas treated Plaintiff, she attended two State agency consultative exams (R. 350–55, 488–91), attended a physical therapy evaluation (R. 619–22), and received epidural injections (R. 625–28, 632–34, 637–39, 643, 647–653). Dr. Lynn Johnson, who made at least one epidural injection, noted that Dr. Nicholas referred Plaintiff to him (R. 643); Dr. Juan Firnhaber, who made several epidural injections, copied Dr. Nicholas on his treatment notes for each injection (R. 626, 628, 633, 638, 648). This documentary evidence undermines the ALJ's statement that the medical records do not show consistent treatment with providers and that Plaintiff "has not always followed the treatment recommendations." The ALJ may be correct, but she needed to explain how

she resolved these apparent inconsistencies or ambiguities. *See* SSR 96–8p, 1996 WL 374184, at *7; *Monroe*, 826 F.3d at 189. Finally, while it is undeniable that Plaintiff had "lots of different providers" (R. 37), it is unclear how this impugns her credibility when such treatment was at the direction of her primary physicians.

Second, it is unclear what the statement "most physical examinations showed normal neurological findings" means. Neurology is the "branch of medical science concerned with the various nervous systems (central, peripheral, and autonomic), plus the neuromuscular junction and muscle, and their disorders." *Stedman's Medical Dictionary* 1210 (27th ed. 2000). Based on medical evidence in the record, the ALJ credited Plaintiff's diagnoses of fibromyalgia, degenerative disc disease, and carpal tunnel syndrome. (R. 33–34.) Dr. Nicholas's treatment notes indicate decreased sensitivity in hands on multiple dates (R. 408, 579, 602, 665, 672), weakness in extremities (R. 665, 669, 675), and a positive Spurling's test on two occasions (R. 665, 669). This is just some of the evidence that appears to contradict the ALJ's statement concerning "normal neurological findings." While there is evidence in the record to support the ALJ's findings in this regard, it was incumbent upon the ALJ to reconcile the material discrepancies in the medical record concerning Plaintiff's neurological symptoms. Because the ALJ failed to resolve these inconsistencies, this part of her credibility analysis cannot be meaningfully reviewed.

Third, there is evidence in the record that contradicts the ALJ's statement that Plaintiff had "good function, a normal range of motion, and a normal gait." For example, her physical therapy evaluation noted that "[s]he has major limitations with

12

[range of motion]" (R. 621), and Dr. Nicholas noted antalgic gait on several occasions (R. 579, 605, 611, 656). Similar to the above, there is evidence in the record that Plaintiff had normal gait and range of motion on several occasions. But the ALJ did not explain how she resolved these apparent inconsistencies before she assessed Plaintiff as less than fully credible, in part, because Plaintiff's gait and range of motion were normal. The Social Security regulations recognize that "the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12–2p, 2012 WL 3104869, at *6 (July 25, 2012). The same may be true with degenerative disc disease. The ALJ's failure to resolve the material inconsistencies with regard to this evidence precludes meaningful review of the ALJ's decision.

### C. RFC and Treating Physician Rule

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). It is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot

reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7.

Crucially, the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe*, 826 F.3d at 189 (quoting *Mascio v. Colvin,* 780 F.3d 632, 636 (4th Cir. 2015)). In other words, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Id.* (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96–5p, 1996 WL 374183, at *3.[6] As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R §§ 404.1527(b)–(c), 416.927(b)–(c); SSR 96–8p, 1996 WL 374184, at *7. Medical opinions are statements from physicians or other "acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

---

[6] This agency ruling was rescinded March 27, 2017, for claims filed on or after that date. 82 Fed. Reg. 15,263 (Mar. 27, 2017).

14

Controlling weight will be given to "a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Craig,* 76 F.3d at 590. A treating source is a "physician, psychologist, or other acceptable medical source who provides . . . or has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902 (effective June 13, 2011 to Mar. 26, 2017).

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, she must then determine the weight to be given the opinion by applying the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist in the field in which the opinion is rendered; and (6) any other relevant factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6); *see also Parker v. Astrue,* 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011). "The ALJ is not required to discuss all of these factors." *Ware v. Astrue,* No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (citing *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007), and *Munson v. Astrue,* No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008)). "However, the ALJ must give 'good reasons' for the weight

15

assigned to a treating source's opinion." *Ware*, 2012 WL 6645000, at *2 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

Here, ALJ Hall's explanation of the weight assigned to treating physician Dr. Theodore Nicholas's opinion is unacceptably sparse. The ALJ's discussion is limited the following analysis:

> [T]he treating physician's findings are inconsistent with those of other providers. For example, he refers to a reduced grip, sensory changes, and reflex changes but these have typically been normal on physical examinations. He said that the claimant can only sit for 15 minutes but there is nothing in the record that would so severely limit her ability to sit. Therefore, little weight is given to this opinion.

(R. 38.) Dr. Nicholas treated Plaintiff on a near-monthly basis for two years at a pain management clinic. He also performed clinical and diagnostic testing that resulted in Plaintiff's diagnosis of carpal tunnel syndrome (R. 410–13), which the ALJ credited and labeled as a severe impairment. In her analysis of Dr. Nicholas's opinion, the ALJ does not explain which of the factors set forth in 20 C.F.R. §§ 404.1527 & 416.927 weigh in favor of Dr. Nicholas's opinions, even though several appear relevant.

The importance of further analysis and explanation cannot be understated here because the determination of disability hinges on a discrete issue: whether Plaintiff's RFC should be limited to (i) *occasional* fingering and handling or (ii) *frequent* fingering and handling. Had Plaintiff been assessed an RFC limiting her to occasional fingering and handling, she would have been found disabled pursuant to the Medical-Vocational Guidelines. (*See* Def.'s Mem. Supp. Mot. J. Pldgs. at 25–26;

16

R. 71.) Dr. Nicholas opined that Plaintiff would be limited to occasional fingering and handling (R. 659), but the ALJ assigned little weight to that opinion and instead found Plaintiff capable of frequent fingering and handling.

Here, the ALJ determined that Plaintiff was severely impaired by fibromyalgia, degenerative disc disease, and carpal tunnel syndrome. Plaintiff has consulted and obtained treatment from multiple physicians over a lengthy time period. Dr. Nicholas regularly treated her at least two years during which he noted decreased touch in hands, weakness in upper extremities, and carpal tunnel syndrome. (R. 408, 412, 579, 602, 665, 667, 672, 675.)

Dr. Nicholas' opinion that Plaintiff is functionally limited to occasional fingering and handling appears consistent with the Social Security regulations. *See* SSR 85–15, 1985 WL 56857, at *7 (Jan. 1, 1985) ("fingering" and "handling"); SSR 83–10, 1983 WL 31251, at *5–6 (Jan. 1, 1983) ("occasional" and "frequent"). The ALJ's only explanation as to this issue is that, in contrast with Dr. Nicholas's medical source statement, Plaintiff's grip, sensory changes, and reflex changes "have typically been normal on physical examinations." (R. 38.) The assignment of little weight to Dr. Nicholas's opinion, and related finding as to manipulative limitations, requires significantly more explanation given the countervailing evidence in the record and the importance of this issue to the Commissioner's determination. Absent such explanation, the undersigned cannot determine whether substantial evidence supports the ALJ's RFC assessment, particularly her finding that Plaintiff is capable of frequent fingering and handling despite her severe impairments.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE #19] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #21] be DENIED, and the Commissioner's decision be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 23, 2017**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district

judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 9th day of August 2017.

_____
KIMBERLY A. SWANK
United States Magistrate Judge